CASE NO.  24-6018

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

LAWRENCE SAMUELS, JR.,

     Defendant-Appellant.

---

On Appeal from the United States District Court
For the Western District of Oklahoma
The Honorable Patrick R. Wyrick, District Judge
D.C. No. 5:18-CR-00152-PRW-1

---

**OPENING BRIEF**

---

Blain Myhre
BLAIN MYHRE LLC
P.O. Box 3600
Englewood, CO 80155
303-250-3932
blainmyhre@gmail.com

**ORAL ARGUMENT IS NOT REQUESTED**
**Attachments are in digital native PDF**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ............................................................. iv

STATEMENT OF PRIOR OR RELATED APPEALS ...................................... v

INTRODUCTION ......................................................................... 1

STATEMENT OF JURISDICTION................................................... 1

STATEMENT OF THE ISSUE........................................................ 2

      The district court committed plain error and violated Samuels' Second
      Amendment rights by (1) finding a violation of the condition prohibiting
      possession of a firearm and revoking supervised release on that basis,
      and (2) by re-imposing that same condition when re-sentencing
      Samuels.  The condition prohibiting Samuels from possessing a firearm
      violates his Second Amendment rights ...................................... 2

STATEMENT OF THE CASE........................................................ 2

I.     Samuels pleads guilty to possessing less than 10 grams of crack and is
      sentenced to 17 years.  He serves 14 years, with the remainder being
      commuted by President Obama ................................................. 2

II.    The government seeks to revoke Samuels' supervised release.  The
      district court revokes it ................................................................ 3

III.   Samuels appeals the revocation, and this court reverses and remands... 4

IV.   On remand, the district court again revokes Samuels' supervised
      release, but reduces Samuels' prison sentence to time served.................. 6

SUMMARY OF THE ARGUMENT ................................................... 7

ARGUMENT........................................................................... 8

**The district court committed plain error and violated Samuels' Second Amendment rights by (1) finding a violation of the condition prohibiting possession of a firearm and revoking supervised release on that basis, and (2) by re-imposing that same condition when re-sentencing Samuels. The condition prohibiting Samuels from possessing a firearm violates his Second Amendment rights** ........................................................................ **8**

**I.    Preservation of Issue and Standard of Review** ................................ **8**

**II.    The district court committed plain error and violated Samuels' Second Amendment rights by (1) finding a violation of the condition prohibiting possession of a firearm and revoking supervised release on that basis, and (2) by re-imposing that same condition when re-sentencing Samuels. The condition prohibiting Samuels from possessing a firearm violates his Second Amendment rights** ................................ **9**

**A.    The Second Amendment prohibits the district court from forbidding Samuels from possessing a firearm merely because he is a felon** ................................................ **9**

**B.    The Second Amendment violations constitute plain error.** **16**

**CONCLUSION** ............................................................................................... **19**

**STATEMENT REGARDING ORAL ARGUMENT** ....................................... **19**

**TYPE-VOLUME CERTIFICATION** ............................................................. **20**

**CERTIFICATE OF SERVICE** ...................................................................... **20**

**ATTACHMENT TO THE BRIEF**

**Judgment of Conviction    ROA Vol. 1 at 69-76 (redacted)**

# TABLE OF AUTHORITIES

## Cases

*D.C. v. Heller*, 554 U.S. 570 (2008) ...................................................... 10, 11, 12, 14

*Garland v. Range,* 2024 U.S. LEXIS 2917 (July 2, 2024) ..................................... 15

*Konigsberg v. State Bar of California*, 366 U.S. 36 (1961) ................................... 11

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ............................ 10-17

*Range v. Attorney General*, 69 F.4th 96 (3rd Cir. 2023) (en banc) ............. 15, 16, 18

*United States v. Harris*, 515 F.3d 1307 (D.C. Cir. 2008) ......................................... 5

*United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009).............................. 10-17

*United States v. Meacham*, 567 F.3d 1184 (10th Cir. 2009) ......................... 8, 16, 17

*United States v. Mike*, 632 F.3d 686 (10th Cir. 2011) ................................... 9, 17, 18

*United States v. Rahimi*,
219 L. Ed. 2d 351, 2024 U.S. LEXIS 2714 (June 21, 2024) ............... 10, 12, 13, 15

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010)........................................... 11

*United States v. Rosado,* 2024 U.S. App. LEXIS 11295 (10th Cir. May 9, 2024).. 10

*United States v. Samuels*, 493 F.3d 1187 (10th Cir. 2007)................................... 1, 2

*United States v. Samuels,*
2023 U.S. App LEXIS 32718 (10th Cir. Dec. 12, 2023).................................. 2, 4, 9

*United States v. Vann*, 776 F.3d 746 (10th Cir. 2015)............................................. 8

*United States v. Venjohn*,
104 F.4th 179, 2024 U.S. App. LEXIS 14022 (10th Cir. June 10, 2024)................ 13

*United States v. Willis*, 2024 U.S. App. LEXIS 4740 (10th Cir. Feb. 29, 2024)..... 10

*Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023) ............................... 11, 12, 13, 17

*Vincent v. Garland*, 2024 U.S. LEXIS 2931 (July 2, 2024) .................................. 13

## Constitutional provisions and Statutes

United States Constitution Second Amendment .......................................... 1, 2, 7-18

18 U.S.C. § 922(g)(1) ............................................................ 9, 10, 11, 15

18 U.S.C. § 922(g)(8) ...................................................................... 12

18 U.S.C. § 3231 ........................................................................... 1

18 U.S.C. § 3583 ........................................................................... 1

21 U.S.C. § 841(a)(1) ................................................................... 1, 2

21 U.S.C. § 841(b)(1)(B)(iii) ........................................................... 1, 2

28 U.S.C. § 1291 ........................................................................... 2

## Other Authorities

Carlton F.W. Larson, *Four Exceptions in Search of a Theory*: District of Columbia v. Heller *and Judicial* Ipse Dixit, 60 Hastings L.J. 1371 (2009) ............................ 14

C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 709-10 (2009) ................................................................. 14

Adam Winkler, Heller's *Catch 22*, 56 UCLA L. Rev. 1551 (2009) ....................... 14

## STATEMENT OF PRIOR OR RELATED APPEALS

The prior or related appeals are the following cases:  *United States v. Samuels,* No. 23-6000, 2023 U.S. App LEXIS 32718 (10th Cir. Dec. 12, 2023); *United States v. Samuels,* No. 13-5024, 528 Fed. Appx. 953 (10th Cir. 7/10/2013); *United States v. Samuels,* No. 10-5108, 417 Fed. Appx. 809 (10th Cir. 3/29/2011); *United States v. Samuels*, No. 05-5186, 493 F.3d 1187 (10th Cir. 2007).

## INTRODUCTION

The district court revoked Defendant-Appellant Lawrence Samuels, Jr.'s supervised release because the court found that Samuels constructively possessed a firearm and thereby violated a supervised release condition forbidding him from possessing a firearm.  But that condition violates Samuels' Second Amendment right to possess a firearm for self-defense.  Laws prohibiting felons from possessing a firearm are a product of the twentieth century not the eighteenth century and therefore are not part of the Nation's history of firearms regulation.  Therefore, such laws, including Samuels' supervised release condition, violate the Second Amendment.  Accordingly, this court should vacate the revocation of Samuels' supervised release and order the immediate termination of his supervised release.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 and § 3583.  In 2004, Defendant-Appellant Samuels was indicted for possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).  *See United States v. Samuels*, 493 F.3d 1187, 1188 (10th Cir. 2007).  He pled guilty and was sentenced to 210 months (17.5 years) and 5 years of supervised release.  He received executive clemency from President Obama in December 2016, commuting his sentence to expire December 19, 2018.

He was released in May 2018, and his supervised release was set to expire in May 2023.  He was arrested in September 2022 and his supervised release was revoked. This court reversed and remanded in *United States v. Samuels,* No. 23-6000, 2023 U.S. App LEXIS 32718 (10th Cir. Dec. 12, 2023).  On remand, the district court again revoked his supervised release and imposed an additional 2 years of supervised release after the expiration of Samuels' time-served sentence.  This court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

The district court committed plain error and violated Samuels' Second Amendment rights by (1) finding a violation of the condition prohibiting possession of a firearm and revoking supervised release on that basis, and (2) by re-imposing that same condition when re-sentencing Samuels.  The condition prohibiting Samuels from possessing a firearm violates his Second Amendment rights.

## STATEMENT OF THE CASE

**I.  Samuels pleads guilty to possessing less than 10 grams of crack and is sentenced to 17 years.  He serves 14 years, with the remainder being commuted by President Obama.**

In 2004, Defendant-Appellant Samuels was indicted for possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).  *See United States v. Samuels*, 493 F.3d 1187, 1188

2

(10th Cir. 2007). He pled guilty and was sentenced to 210 months (17.5 years) and 5 years of supervised release. He received executive clemency from President Obama in December 2016. His commutation grant provided that his sentence was commuted to expire on December 19, 2018 and the unpaid balance of his $5,000 fine would be remitted at the time of his release, conditioned upon enrollment in residential drug treatment. https://www.justice.gov/pardon/file/993771/dl?inline at pdf p. 12 (last retrieved July 22, 2024). He was released in May 2018, and his supervised release was set to expire in May 2023. *See* ROA Vol. 1 at 53.[1]

## II.     The government seeks to revoke Samuels' supervised release. The district court revokes it.

In July 2022, Samuels filed a motion for early termination of his supervised release. ROA Vol. 1 at 8-9. While that motion was pending, Samuels was pulled over for speeding while driving a rental car on I-40 in Texas. *See* ROA Vol. 1 at 54. During a consent search, the officer found a handgun in a sock in the engine bay. *Id.* Samuels was arrested for being a felon in possession of a firearm. *Id.* His probation officer filed a Petition for Warrant or Summons for Offender Under Supervision, alleging Samuels "violated (1) a mandatory condition of his release not to commit another federal, state, or local crime; (2) a standard condition not to possess a firearm; and (3) another standard condition not to leave the judicial

---

[1] Citations to the record are to volume and pdf page number, e.g., ROA Vol. 1 at 1.

district without permission of the district court or his probation officer." ROA Vol. 1 at 54.

At a revocation hearing, Samuels admitted that he left the judicial district without permission but disputed the violations arising from his alleged possession of a firearm. ROA Vol. 1 at 55. The district court applied a "sole-occupancy standard" for constructive possession and found Samuels guilty of all three violations. *Id.* The court revoked Samuels' supervised release and sentenced him to 24 months in prison followed by an additional 36 months of supervised release. ROA Vol. 1 at 55.

## III. Samuels appeals the revocation, and this court reverses and remands.

After the district court revoked his supervised release, Samuels appealed.[2] In an unpublished decision, this court reversed and remanded, concluding the district court had applied the wrong standard for determining constructive possession of the firearm. ROA Vol. 1 at 52-66 (No. 23-6000, 2023 U.S. App. LEXIS 32718, 2023 WL 8596457 (10th Cir. Dec. 12, 2023)).

This court held that the district court erred in applying the sole-occupancy standard for constructive possession and it should have instead applied the joint-occupancy standard. The court noted that because Samuels "did not have actual possession of the gun, the Government needed to show that he had constructive

---

[2] Samuels was continuously incarcerated following his September 2022 arrest.

4

possession." ROA Vol. 1 at 58. The court noted that "when more than one person occupies a vehicle simultaneously, the joint-occupancy standard applies," and that it also applies where a defendant was alone in the vehicle but the vehicle belonged to another. *See* ROA Vol. 1 at 59-60. "Courts apply the joint-occupancy standard to avoid finding innocent occupants liable for contraband place by another occupant." ROA Vol. 1 at 60, citing *United States v. Harris*, 515 F.3d 1307 (D.C. Cir. 2008).

Addressing Samuels' circumstances, the court noted that "[b]ecause a renter does not own a rental car, and because rental cars frequently change hands, courts should consider whether to apply the joint-occupancy standard when contraband is found in a rental car." ROA Vol. 1 at 61. The court concluded that though the joint-occupancy standard does not apply in every rental-car situation, it did apply here for three reasons: (1) Samuels was driving a rental car; (2) he had possession of the car for just 3 days; and (3) the gun was not located in the passenger compartment or trunk but instead was "under the hood inside a sock tied to the engine black, where a renter and perhaps also the rental company are less likely to check than inside the car." ROA Vol. 1 at 62.

This court was unable to conclude that the district court's use of the sole-occupancy, rather than joint-occupancy, standard was harmless, and therefore reversed and remanded to the district court for additional proceedings consistent

with the opinion.  ROA Vol. 1 at 64-66.

## IV.    On remand, the district court again revokes Samuels' supervised release, but reduces Samuels' prison sentence to time served.

On remand, the district court heard argument on whether the existing evidentiary record was sufficient to prove constructive possession under the joint-occupancy standard.  ROA Vol. 3 at 5.[3]  No new evidence was presented. Following the parties' arguments, the court again determined that Samuels had violated the mandatory condition that he not commit another federal, state, or local crime and the standard condition that he not possess a firearm.  ROA Vol. 3 at 27-30.  Constructive possession of the firearm formed the basis for both violations.

The court noted the applicable sentencing guidelines range was 21 to 27 months.  ROA Vol. 3 at 30.  The parties had no objection to those calculations.  *Id.* But Samuels' counsel argued for a sentence of time served, which at the time of the revocation hearing (January 31, 2024) was around 17 months.  ROA Vol. 3 at 26-27, 32.  The probation officer indicated that there had been no issues with Samuels during that period of incarceration.  *Id.* at 32.

The court noted, "I do think at this point Mr. Samuels has served a sufficient sentence for his violation.  I am confident that Mr. Samuels is, hopefully, in the future – and supervised release will take into account of this – is learning respect

---

[3] The pdf page numbers of ROA Vol. 3 do not match up with the transcript page numbers.  Citations are to the pdf page not the transcript page number.

6

for the law and particularly respect for the court's conditions of supervised release . . . ."  ROA Vol. 3 at 36-37.  The court imposed a sentence for a term of "time served" followed by two years of supervised release, including compliance with the conditions previously adopted.  ROA Vol. 3 at 38-39; ROA Vol. 1 at 69-76 (judgment of revocation).

## SUMMARY OF THE ARGUMENT

Restrictions on felons possessing firearms are a product of the twentieth century not the eighteenth century.  Such restrictions are therefore not consistent with the Nation's historical tradition of firearm regulation and thus violate the Second Amendment.

The district court revoked Samuels' supervised release based on his constructive possession of a firearm, which violated two conditions of his supervised release—(1) that he not possess a firearm; and (2) that he not violate a federal, state, or local law.  But the prohibition on Samuels' possessing a firearm violates the Second Amendment because that prohibition is not consistent with the Nation's tradition of firearm regulation.   Thus, the condition forbidding Samuels from possessing a firearm is unconstitutional and could not serve as a basis for revoking his supervised release.  It was plain error for the district court to revoke on that basis.  It was also plain error for the district court to re-impose that condition on Samuels for his additional period of supervised release because the

condition violates the Second Amendment.  Accordingly, this court should vacate

Samuels' revocation and order the immediate termination of his supervised release.

## ARGUMENT

**The district court committed plain error and violated Samuels' Second
Amendment rights by (1) finding a violation of the condition prohibiting
possession of a firearm and revoking supervised release on that basis, and (2)
by re-imposing that same condition when re-sentencing Samuels.  The
condition prohibiting Samuels from possessing a firearm violates his Second
Amendment rights.**

### I.    Preservation of Issue and Standard of Review

Second Amendment law has changed recently, including in this circuit.  The

restrictions put on Samuels that forbid him possessing a firearm—both the

conditions of his original supervised release and those imposed by the district court

in entering judgment below—violate Samuels' Second Amendment right to

possess a firearm for self-defense.  Therefore, the district court's judgment cannot

stand and Samuels' supervised release should terminate immediately.

Samuels' trial counsel did not raise this issue, so this court reviews for plain

error.  *See United States v. Vann*, 776 F.3d 746, 759 (10th Cir. 2015).  Plain error

occurs when there is (1) error that is (2) plain, which (3) affects substantial rights,

and (4) seriously affects the fairness, integrity, or public reputation of judicial

proceedings.  *Id*.  Errors are "plain" if they are clear or obvious *at the time of the*

*appeal.  United States v. Meacham*, 567 F.3d 1184, 1190 (10th Cir. 2009).  Plain

error analysis is conducted "less rigidly when reviewing a potential constitutional

error." *United States v. Mike*, 632 F.3d 686, 691-92 (10th Cir. 2011).

Legal questions relating to revocation of supervised release are reviewed de novo. *United States v. Samuels*, 2023 U.S. App. LEXIS 32718 *6-*7 (Dec. 12, 2023); ROA Vol. 1 at 57. While district courts have broad discretion in imposing conditions for supervised release, those conditions must comport with relevant constitutional provisions. *Mike*, 632 F.3d at 692. Thus, the supervised release condition that prohibits Samuels from possessing a firearm must comport with the Second Amendment. Because it does not, this court should reverse the judgment of the district court and order the immediate termination of Samuels' supervised release.

**II.  The district court committed plain error and violated Samuels' Second Amendment rights by (1) finding a violation of the condition prohibiting possession of a firearm and revoking supervised release on that basis, and (2) by re-imposing that same condition when re-sentencing Samuels. The condition prohibiting Samuels from possessing a firearm violates his Second Amendment rights.**

**A.  *The Second Amendment prohibits the district court from forbidding Samuels from possessing a firearm merely because he is a felon.***

A discussion of the evolution of this circuit's Second Amendment case law is necessary to address this issue. Numerous defendants in this circuit have recently challenged on Second Amendment grounds their convictions for violating 18 U.S.C. § 922(g)(1), which prohibits a felon from possessing a firearm. *See,*

*e.g., United States v. Rosado*, 2024 U.S. App. LEXIS 11295 (10th Cir. May 9, 2024); *United States v. Willis*, 2024 U.S. App. LEXIS 4740 (10th Cir. Feb. 29, 2024).  Those efforts have been unsuccessful to date, but the landscape has changed after the Supreme Court's recent decision in *United States v. Rahimi*, 219 L. Ed. 2d 351, 2024 U.S. LEXIS 2714 (June 21, 2024).

After *D.C. v. Heller*, 554 U.S. 570 (2008), in *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), this court rejected a Second Amendment challenge to a conviction under 18 U.S.C. § 922(g)(1), noting that *Heller* explicitly said, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."  *McCane*, 573 F.3d at 1047, quoting *Heller*, 128 S. Ct. at 2816-17.

But contrary to that quotation, doubts now exist about the constitutionality of the prohibition on possession of firearms by felons.  In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court emphasized that Second Amendment rights are not confined to the home—"To confine the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections."  597 U.S. at 32.  The Court noted that "confining the right to 'bear' arms to the home would make little sense given that self-defense is 'the *central component* of the [Second Amendment] right itself.'"  *Id.* at 32, quoting *Heller*, 554 U.S. at 599 (emphasis and brackets in original).  "After all, the Second

10

Amendment guarantees an 'individual right to possess and carry weapons in case of confrontation,' *Heller*, 554 U.S. at 592, and confrontation can surely take place outside the home." 597 U.S. at 33.

In *Bruen*, the Court rejected the two-part approach taken by a number of circuits—including this circuit in *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010)—that applied "means-end scrutiny in the Second Amendment context." 597 U.S. at 19 and n.4. Instead, the Supreme Court set forth this standard: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 24, quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 n.10 (1961).

After *Bruen*, this court addressed whether *McCane* remained good law in light of *Bruen*. In *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023), this court concluded *Bruen* did not overrule *McCane,* and therefore *McCane* remained good law and controlling precedent. 80 F.4th at 1199. *Vincent* involved a constitutional challenge by a felon who had been convicted of the non-violent felony of bank fraud. *See id.* Under 18 U.S.C. § 922(g)(1), Vincent, as a convicted felon, could

not lawfully possess a firearm.  She argued, however, that *Bruen* had abrogated *McCane.*  This court rejected that contention:  "Though *Bruen* created a new test for determining the scope of the Second Amendment, the Court didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons."  80 F.4th at 1201.  The court said that given "the six Justices' reaffirmation of the *Heller* language and the Court's apparent approval of 'shall-issue' regimes and related background checks, we conclude that *Bruen* did not indisputably and pellucidly abrogate our precedential opinion in *McCane*."  *Id.* at 1202.

But the panel's decision in *Vincent* is not the end of the story.  After this court handed down *Vincent*, the Supreme Court issued *Rahimi.*  *Rahimi* addressed the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he represents a credible threat to the physical safety of an intimate partner or child of the partner.  219 L. Ed. 2d at 360.  Rahimi was subject to such an order.  The Supreme Court concluded that § 922(g)(8) survived a facial Second Amendment challenge, 219 L. Ed. 2d at 369, though Justice Thomas dissented, concluding the statute was not consistent with the Nation's historical tradition of firearm regulation.  219 L. Ed. 2d at 399-400 (Thomas, J., dissenting) ("Not a single historical regulation justifies the statute at issue").

Though *Rahimi* itself is not particularly germane to this appeal, its aftermath is. Shortly after *Rahimi* came down, the Supreme Court granted certiorari in *Vincent*, vacated the judgment, and remanded the case back to this court in light of *Rahimi. See Vincent v. Garland*, 2024 U.S. LEXIS 2931 (July 2, 2024). Thus, *Vincent* is no longer precedent and *McCane's* continued validity is questionable. This court should reject *McCane* in light of the evolving Supreme Court Second Amendment jurisprudence.[4]

This court applies the law in effect at the time it renders its decision on appeal, not the law in effect at the time the district court ruled. *See United States v. Venjohn*, 104 F.4th 179, 2024 U.S. App. LEXIS 14022, *14 (10th Cir. June 10, 2024). Therefore, while *Vincent* was in effect at the time the district court ruled, it is no longer in effect today.

Under *Bruen*, the prohibition on felons possessing firearms—including Samuels' supervised release condition—cannot stand. As Judge Tymkovich pointed out in his concurrence in *McCane*, authorities assert that "the weight of historical evidence suggests felon dispossession laws are creatures of the twentieth—rather than the eighteenth—century." *McCane*, 573 F.3d at 1048 (Tymkovich, J., concurring). Judge Tymkovich cited authorities demonstrating

---

[4] Since the Supreme Court remand in *Vincent*, there has been no activity in the *Vincent* case in this court.

that eighteenth-century America did not restrict the ability of felons to own firearms. *See id.*, citing C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 709-10, 714 (2009); Adam Winkler, Heller's *Catch 22*, 56 UCLA L. Rev. 1551, 1561, 1563 (2009); Carlton F.W. Larson, *Four Exceptions in Search of a Theory*: District of Columbia v. Heller *and Judicial* Ipse Dixit, 60 Hastings L.J. 1371, 1372 (2009). Judge Tymkovich's concurring opinion in *McCane* presciently recognized the issue presented here—do felon-in-possession laws, including supervised release restrictions, violate the Second Amendment? Because these restrictions are not part of the Nation's historical regulation of firearms, *see Bruen*, 597 U.S. at 24, the answer is "yes."

At the time *McCane* was decided, the dictum in *Heller* made deciding *McCane* relatively easy because *Heller* said that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626. But in light of *Bruen,* and the Supreme Court's recent GVR of *Vincent*, Judge Tymkovich's concurrence in *McCane* noting that there was *not* an eighteenth-century tradition of restricting felons from possessing firearms should be adopted. *See McCane*, 573 F.3d at 1048-49 (Tymkovich, J., concurring). Under *Bruen*, felon-in-possession statutes and similar prohibitions in supervise release conditions violate the Second Amendment. Thus, the government cannot demonstrate that felon-in-possession restrictions making mere possession of a

14

firearm by a felon a crime or violation are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. Instead, because such restrictions are a product of the twentieth century, not the eighteenth, *McCane*, 573 F.3d at 1048 (Tymkovich, J., concurring), they violate the Second Amendment.

Recently, the en banc Third Circuit concluded that 18 U.S.C. § 922(g)(1) violates the Second Amendment. *Range v. Attorney General*, 69 F.4th 96 (3rd Cir. 2023) (en banc). The court in *Range* concluded that the government failed to "carry its burden of showing that our Nation's history and tradition of firearm regulation" supported disarming the plaintiff, who had a previous false statement conviction. *Id.* at 98. *Range* is consistent with Judge Tymkovich's *McCane* concurrence in finding no historical tradition of regulating mere possession of firearms by previously convicted felons. Though the Supreme Court has also vacated *Range* and remanded to the Third Circuit for further proceedings in light of *Rahimi*, *see Garland v. Range,* 2024 U.S. LEXIS 2917 (July 2, 2024), the fact remains that there does not appear to have been an eighteenth-century tradition of barring felons from possessing firearms. Therefore, under *Bruen*, such a bar violates the Second Amendment.[5]

Similarly, banning a felon on supervised release from the mere possession of

---

[5] On remand in *Range*, the Third Circuit has ordered the parties to submit supplemental briefs, but as of filing of this brief, those supplemental briefs had not yet been filed.

a firearm violates the Second Amendment.  The history examined by the Third

Circuit in *Range* and by Judge Tymkovich in *McCane*, illustrates that the

regulation of firearm possession by felons is a twentieth-century invention and

therefore is not "consistent with the Nation's historical tradition of firearm

regulation."  *Bruen*, 597 U.S. at 24.  Thus, the supervised release condition

forbidding Samuels from possessing a firearm violates the Second Amendment.

Moreover, because mere possession—in this case, constructive possession

under the joint-occupancy standard—was the basis for the two violations that

resulted in the revocation of Samuels' supervised release and his subsequent

imprisonment, the revocation of his supervised release cannot stand.  At this point,

Samuels has served the prison sentence for the revocation and is now on an

additional two years of supervised release, set to expire in early 2026.  *See* ROA

Vol. 1 at 72 (imposing 24 months of supervised release).  In light of the Second

Amendment violation, this court should vacate the revocation and order the

immediate termination of Samuels' supervised release.

### B.    *The Second Amendment violations constitute plain error.*

The government will contend that there is no plain error here.  Untrue.  Plain

error occurs when there is (1) error, (2) that is plain, which (3) affects substantial

rights and (4) seriously affects the fairness, integrity, or public reputation of

judicial proceedings.  *Meacham*, 567 F.3d at 1190.  Plain error analysis is

conducted "less rigidly when reviewing a potential constitutional error." *Mike*, 632

F.3d at 691-92.  Errors are "plain" if they are clear or obvious at the time of the

appeal.  *Meacham*, 567 F.3d at 1190.

       While this court has not yet resolved *Vincent* on remand, it is reasonably

anticipated that the court will do so before the resolution of this appeal.  And based

on *Bruen* and Judge Tymkovich's concurrence in *McCane*, felon-in-possession

prohibitions violate the Second Amendment.  *Vincent* should make that

determination, and if it does, then the error here would be plain and obvious.  *See*

*Meacham, supra.*  If, on the other hand, the panel in *Vincent* on remand were to

determine that *McCane* is still good law, then Samuels makes this argument in

order to preserve his appellate rights for further review, whether en banc review by

this court or review by the Supreme Court.

       If prohibiting mere possession of a firearm by a felon violates the Second

Amendment, then the error in revoking Samuels' supervised release for

constructively possessing a firearm and the error in imposing that condition on his

additional supervised release were plain errors.  As noted, conditions for

supervised release must comport with relevant constitutional provisions.  *Mike*,

632 F.3d at 692.  The condition forbidding Samuels from possessing a firearm

simply because he is a felon violates the Second Amendment by infringing on

17

Samuels' right to possess a weapon for self-defense.[6]  Accordingly, the district court could not use Samuels' constructive possession of a firearm as a basis to revoke his supervised release.  Thus, the revocation cannot stand, as it is plain error.

Further, re-imposing the condition on Samuels that he cannot possess a firearm on supervised release violates the Second Amendment.  Therefore, imposing that condition also constituted plain error by the district court.  These errors affected and continue to affect Samuels' substantial rights by depriving him of his fundamental Second Amendment right to possess a firearm for self-defense. The errors undermine the fairness and integrity of the judicial proceedings by imposing an unconstitutional condition on Samuels, something the district court cannot do.  *See Mike, supra* (conditions of supervised release must comport with constitutional provisions).

The appropriate remedy in these circumstances is to vacate the revocation of Samuels' supervised release and to order the immediate termination of the current supervised release.  Alternatively, this court should invalidate on Second Amendment grounds the prohibition on Samuels' possessing a firearm.

---

[6] Like the plaintiff in *Range*, Samuels' underlying offense was non-violent— possession of less than 10 grams of crack.

## CONCLUSION

This court should vacate the revocation of Samuels' supervised release and order the immediate termination of his supervised release. Alternatively, this court should invalidate the condition that prohibits Samuels' from possessing a firearm.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would not materially assist the court in resolving this appeal. Moreover, oral argument would likely delay resolution of this appeal, which is not in Mr. Samuels' interest.

Respectfully submitted this 22nd day of July, 2024.

 s/ Blain D. Myhre
Blain D. Myhre (Digital)
*Attorney for Appellant*

## **TYPE-VOLUME CERTIFICATION**

Under FRAP 32(g), I certify that this brief contains 4,212 words, relying on my word processing software (Microsoft Word for Mac Version 16.87) for the word count.

s/ Blain D. Myhre
Blain D. Myhre (Digital)

## **CERTIFICATE OF SERVICE**

I certify that service of this document was made via the ECF system, on this 22nd day of July, 2024 to

Daniel Gridley, Jr., Assistant United States Attorney
Jessica L. Cárdenas, Assistant United States Attorney
Western District of Oklahoma
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
Daniel.Gridley.Jr@usdoj.gov
Jessica.Cardenas@usdoj.gov

s/Blain D. Myhre
Blain D. Myhre (Digital)

AO 245D(Rev. 02/18) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| | (For **Revocation** of Probation or Supervised Release) |
| v. | |
| | Case Number: CR-18-00152-001-PRW |
| | USM Number: 09609-062 |
| LAWRENCE SAMUELS JR. | Cody Gilbert |
| | Defendant's Attorney |

**THE DEFENDANT:**

☒ Admitted guilt to violation no(s). 3 of the term of supervision.

☒ Was found in violation of count(s) 1 and 2 after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 1 | **Violation of Mandatory Condition:** The defendant shall not commit another federal, state, or local crime. | September 11, 2022 |
| 2 | **Violation of Standard Condition No. 16:** You will not possess a firearm, destructive device, or other dangerous weapon. | September 11, 2022 |
| | (violations continued on the next page) | |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has not violated count(s) and is discharged as to such violation(s).

**IT IS ORDERED** that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of  Defendant's  Soc. Sec. No.: ▮▮▮▮

Defendant's Year of Birth: ▮▮▮▮

City and State of Defendant's Residence:
Tuttle, Oklahoma

January 31, 2024
Date of Imposition of Sentence

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

2/1/2024
Date Signed

AO 245D(Rev. 02/18) Judgment in a Criminal Case for Revocations
Sheet 1A

Judgment Page 2 of 8

DEFENDANT: Lawrence Samuels Jr.
CASE NUMBER: CR-18-00152-001-PRW

### ADDITIONAL VIOLATIONS

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 3 | **Violation of Standard Condition No. 1:** You will not leave the judicial district without permission of the Court or probation officer. | September 11, 2022 |

AO 245D(Rev. 02/18) Judgment in a Criminal Case for Revocations
Sheet 2—Imprisonment

Judgment Page 3 of 8

DEFENDANT: Lawrence Samuels Jr.
CASE NUMBER: CR-18-00152-001-PRW

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of **TIME SERVED.**

☐ The Court makes the following recommendations to the Bureau of Prisons:


☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at

  ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Office.


## RETURN

I have executed this judgment as follows:


Defendant was delivered on _____ to _____ at _____, with a certified copy of this judgment.


_____
UNITED STATES MARSHAL

BY: _____
DEPUTY UNITED STATES MARSHAL

AO 245D(Rev. 02/18) Judgment in a Criminal Case for Revocations
Sheet 3—Supervised Release

Judgment Page 4 of 8

DEFENDANT: Lawrence Samuels Jr.
CASE NUMBER: CR-18-00152-001-PRW

### SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **twenty-four (24) <u>MONTHS.</u>**

### MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed eight (8) drug tests per month.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statue authorizing a sentence of restitution *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐You must participate in an approved program for domestic violence. (*check if applicable*)

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245D(Rev. 02/18) Judgment in a Criminal Case for Revocations
Sheet 3A—Supervised Release

Judgment Page 5 of 8

DEFENDANT: Lawrence Samuels Jr.
CASE NUMBER: CR-18-00152-001-PRW

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. Stricken.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

**U.S. Probation Office Use Only**

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see Overview of Probation and Supervised Release Conditions, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

AO 245D(Rev. 02/18) Judgment in a Criminal Case for Revocations
Sheet 3B—Supervised Release

Judgment Page 6 of 8

DEFENDANT: Lawrence Samuels Jr.
CASE NUMBER: CR-18-00152-001-PRW

## SPECIAL CONDITIONS OF SUPERVISION

☒ The defendant shall participate in a program of substance abuse aftercare at the direction of the probation officer to include urine, breath, or sweat patch testing, and outpatient treatment. The defendant shall actively participate in the treatment program until successfully discharged from the program or until the probation officer has excused the defendant from the program. The defendant shall totally abstain from the use of alcohol and other intoxicants. The defendant shall not frequent bars, clubs, or other establishments where alcohol is the main business. The defendant shall contribute to the cost of services rendered (copayment) in an amount to be determined by the probation officer based on the defendant's ability to pay.

☒ The defendant must submit to a search of his person, property, electronic devices or any automobile under his control to be conducted in a reasonable manner and at a reasonable time, for the purpose of determining possession, or evidence of possession of firearms, controlled substances, drug paraphernalia, alcohol, evidence of drug or alcohol use, and evidence of drug trafficking activities at the direction of the probation officer based on reasonable suspicion. Further, the defendant must inform any residents that the premises may be subject to a search.

AO 245D(Rev. 02/18) Judgment in a Criminal Case for Revocations
Sheet 4—Criminal Monetary Penalties                                    Judgment Page 7 of 8

DEFENDANT: Lawrence Samuels Jr.
CASE NUMBER: CR-18-00152-001-PRW

### CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments set forth on Sheet 5.

|  | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $0 | $0 | $0 | $0 |

☐ The determination of restitution is deferred until.  An *Amended Judgment in a Criminal Case (AO245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
|  |  |  |  |

**Totals**

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 5 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ The interest requirement is waived for the ☐ fine ☐ restitution

☐ The interest requirement for the ☐ fine ☐ restitution is modified as follows:

*  Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
**Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245D(Rev. 02/18) Judgment in a Criminal Case for Revocations
Sheet 5—Schedule of Payments

Judgment Page 8 of 8

DEFENDANT: Lawrence Samuels Jr.
CASE NUMBER: CR-18-00152-001-PRW

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐ Lump sum payment of $due immediately, balance due
  ☐ not later than _____, or
  ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s): _____

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court cost.